IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 2000 Session

## NEXT GENERATION, INC., v. WAL-MART, INC., d/b/a SAM'S WHOLESALE CLUB

**Direct Appeal from the Circuit Court for Davidson County**
**No. 96C-1068   Hon. Thomas W. Brothers, Circuit Judge**

---

**No. M2000-00114-COA-R3-CV - Filed December 21, 2000**

---

In this contract dispute, the jury awarded damages to Wal-Mart, Inc., and the Trial Court concurred. Next Generation, Inc., appealed raising issues as to the admissibility of evidence and the Trial Court's instructions to the jury. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

William L. Brown and James T. Williams, Chattanooga, Tennessee, for Appellant, Next Generation, Inc.

Thomas Pinckney, Andy Rowlett, and Keith Quinn, Nashville, Tennessee, for Appellee, Wal-Mart Stores, Inc., d/b/a Sam's Wholesale Club.

**OPINION**

In this breach of contract action involving an agreement to purchase 2000 units of a sporting clay machine between Next Generation, Inc., ("Next"), and Wal-Mart, Inc. d/b/a/ Sam's Wholesale Club ("Sam's"), a jury awarded Sam's $1,084,000.00 and Next has appealed. Next raised the following issues:

> 1.      Whether the Trial Court committed error regarding the parol evidence rule?

2. Whether the Trial Court's supplemental instructions following the jury's questions were erroneous?

3. Whether the Trial Court erred in failing to direct a verdict for Next regarding Sam's claim that Next breached an agreement to market the product?

4. Whether the Trial Court erred in failing to direct a verdict for Next regarding Sam's claim that Next breached the implied warranty of merchantability?

5. Whether the Trial Court erred in failing to direct a verdict for Next regarding Sam's claim that Next agreed to reimburse Sam's for units that did not sell?

6. Whether the jury charge of the Trial Court violated the statute of frauds?

7. Whether the Trial Court erred in granting Sam's a directed verdict on Next's claim of promissory fraud and punitive damages?

We review judgments based upon a jury verdict and approved by the Trial Judge by determining whether there is any material evidence to support the verdict. Tenn. R. App. P. 13(d). In determining whether there is material evidence to support the verdict, we must take the strongest legitimate view of the evidence in favor of the verdict, assume the truth of all evidence that supports the verdict, and allow all reasonable inferences to sustain the verdict, discarding all countervailing evidence. *Barnes v. Goodyear Tire and Rubber Co.,* 2000 WL 688864 (Tenn. 2000). If the record contains any material evidence to support the jury's verdict, the judgment must be affirmed. *Crabtree Masonry Co. v. C & R Constr., Inc.,* 575 S.W.2d 4, 5 (Tenn. 1978).

The agreement between the parties was entered in Arkansas, but Tennessee and Arkansas have the same version of the parol evidence rule, which basically states that a writing intended by the parties as the final expression of their agreement may not be contradicted by evidence of a prior or contemporaneous oral agreement, but may be explained or supplemented by consistent additional terms. *See* Tenn. Code Ann. §47-2-202 and Ark. Code Ann. §4-2-202.

Similar to Arkansas, Tennessee law provides that a contract which is unambiguous on its face is considered final and may not be contradicted with parol evidence. *City of Memphis for Use and Benefit of State v. Moore,* 818 S.W.2d 13 (Tenn. Ct. App. 1991). Likewise, where the written document contains a clause stating that no other agreements exist other than the ones contained therein, it is final and cannot be varied by parol evidence. *Tidwell v. Morgan Building Systems, Inc.,* 840 S.W.2d 373 (Tenn. Ct. App. 1992.)

In this case, the written documents upon which Next relies are a "commitment" letter written by Dean Sanders, president of Sam's, which states that Sam's will purchase 2000 units from Next before the end of fiscal year 1994, and the vendor agreement signed by Next. It is clear not only from the testimony, but also from the documents, that neither was intended by the parties to be

a "final expression of their agreement" as contemplated by the parol evidence rule. The commitment letter, as testified to by Sanders and by Ray Murski, the sales representative for Next, was written to enable Next to obtain financing for production, and was clearly not intended to be a final expression of the agreement, as it is only a one-line document signed by one party. The commitment letter contains no terms regarding payment, form of delivery, dates of delivery, and numerous other essential items.

The vendor agreement was a document that Sam's required its vendors to complete and have on file, but it does not speak to such significant terms as price, quantity, delivery, payment, etc. It is also deficient so far as detailing the actual substance of the parties' deal, and clearly was not intended as the final expression. Both the commitment letter and the vendor agreement are either ambiguous or silent as to many essential terms, and neither contains an integration clause. The evidence establishes that these two documents were not the final expression of the parties agreement.

Since the writings were not final expressions, and the oral terms regarding marketing were not contradictory of the writings, there is no parol evidence issue. There was material evidence regarding the oral terms of the parties' agreement to support the jury's finding that Next had obligations under the contract which were breached, and thus the jury's finding in this regard is supported by material evidence.

Next argues that the Trial Court's supplemental instructions to the jury following the jury's submission of questions were erroneous, and that Next's proposed instruction should have been given. The Trial Court's instructions basically stated that a contract can be oral or written or both, and that the existence of a contract must be proven by a preponderance of the evidence.[1] This instruction is a correct statement of the law, and is applicable to the facts and issues in the case and is therefore not erroneous. *Ladd by Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83 (Tenn. Ct. App. 1996).

Next requested an instruction which stated that oral terms inconsistent with the written document should not be considered. Since none of the oral terms described by the parties were inconsistent with written documents, the Trial Court correctly refused the instruction.

Likewise, Next's proposed instruction that any change to the written document would have to be in writing was not appropriate. Written contracts may be supplemented by oral terms when the written document is not a final expression of the agreement, and when the oral terms are not inconsistent. The instruction was not supported by the law or the evidence and was properly denied.

Next argues that it was entitled to a directed verdict. This issue hinges on the

---

[1]The jury had asked if they were to give equal weight to oral and written agreements and whether a written document would supercede an oral agreement?

question of whether there was evidence in the record to support the conclusion that Next agreed to undertake responsibilities with regard to the marketing of the product. Dean Sanders and Ray Murski testified unequivocally that LeAnna and Moore for the plaintiff Next had agreed from the beginning to run ads, do demonstrations, go to shows and shoots, etc., in order to create a demand for the product. LeAnna and Moore also testified that they agreed to do these things, but that their agreement came after the units had been shipped and were not selling. Thus, the evidence is undisputed that the agreement existed, the only dispute regarding the agreement was when the agreement was made and the extent to which they committed themselves. There is also evidence that Next had not fulfilled its agreement with regard to marketing. Murski, as an agent for Next, identified many things which Moore and LeAnna had committed themselves to do that had not been completed. Moore and LeAnna admitted that they had not done all of the things which were described in Murski's communications with Sam's. Sanders also testified that Next had failed in its marketing responsibilities. There was evidence in the record that an agreement to promote existed, and that it had not been satisfied by Next. Accordingly, a directed verdict was inappropriate.

As to the denial of a directed verdict regarding Next's breach of warranty of merchantability, Sam's made the claim in its pleadings, but admits that the issue is now moot because counsel for Sam's did not raise the issue in closing arguments. Next explains that they have preserved the issue out of an abundance of caution, and we conclude there is no need to address the issue.

Next also complains about the refusal to direct a verdict on the issue of breach of agreement to reimburse. While there is no express agreement in the record that Next agreed to reimburse Sam's for the units picked up, the alleged agreement to reimburse was not the only basis for awarding damages to Sam's. There was ample evidence in the record to establish that Next had promised to undertake certain marketing responsibilities as a part of this agreement, and that Next breached this portion of the contract. Sam's had ordered and paid for nearly 200 units that it could not sell, and those units were ultimately returned to Next. Sam's expended over a million dollars for these units that did not sell and Next ultimately resold the units after regaining possession. The jury could reasonably conclude Sam's was entitled to a refund of the money paid for those units as compensatory damages, to compensate Sam's for Next's breach. *See Wilson v. Dealy*, 434 S.W.2d 835 (Tenn. 1968); *Nashland Associates v. Shumate*, 730 S.W.2d 332 (Tenn. Ct. App. 1987). Moreover, "the amount of damages is primarily a jury question, and a verdict approved by the trial court is entitled to great weight in this court." *Act-O-Lane Gas Service Co. v. Hall*, 248 S.W.2d 398 (Tenn. Ct. App. 1951).

Next argues that the Trial Court's instructions to the jury were erroneous because (1) they allowed the jury to consider evidence of an alleged oral contract to reimburse in violation of the statute of frauds, and (2) they erroneously stated that the burden of proof for such a contract was a preponderance of the evidence, rather than the clear and convincing standard required under the Arkansas statute of frauds. Next places great emphasis on this alleged oral agreement to reimburse. It was not significant to the outcome of the case. The jury's verdict was supported by material evidence that Next had an obligation to market the product and failed to do so, and the verdict may

be upheld on this basis alone. *Benson v. Tennessee Valley Elec. Co-op.*, 868 S.W.2d 630 (Tenn. Ct. App. 1993). Error, if any in this regard, was harmless. Tenn. R. App. P. 36(b).

Next argues that the Trial Court erred in granting Sam's a directed verdict on Next's claims of promissory fraud and punitive damages. We conclude the Trial Court properly directed verdicts on these issues. The Trial Court found that reasonable minds could not differ as to the lack of fraud, because there was no proof of present intent to willfully injure through false promise, as is required by Arkansas law. Next admits that this is a proper statement of Arkansas law, but argues that Sam's committed to purchase 2000 units when they only intended to purchase 200, and that such constitutes promissory fraud. The testimony from which this can be deduced, however, is that of Ray Murski, who was an agent of Next. Murski testified that Sam's would try 200 units or so and see how they sold, and that if they sold well Sam's would purchase 2000 or more. Sanders testified that he fully intended to purchase 2000 units or more, but that the units did not sell because Next breached its promise to promote the product. Since Murski was agent for Next, his knowledge is imputed to Next and would have been known by Next and could not form a basis for promissory fraud. *See City Nat. Bank of Fort Smith, Ark. v. Vanderboom*, 290 F. Supp. 592 (W.D. Ark. 1968).

Likewise, in the absence of fraud, there is no basis for punitive damages, and thus the Trial Court properly directed a verdict on this issue as well. *See Ray Dodge, Inc., v. Moore*, 479 S.W.2d 518 (Ark. 1972); *Hodges v. S.C.Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992).

Finally, Next argues that the Trial Court erred in granting Sam's a directed verdict on its claim for prejudgment interest. Utilizing the proper standard of review, the Trial Court properly granted a directed verdict on this issue. Prejudgment interest is allowed to compensate for damages wrongfully withheld from the time of loss until judgment, and is not allowed where the loss is not "immediately ascertainable with reasonable certainty." *TB of Blythesville, Inc. v. Little Rock Sign & Emblem, Inc.*, 946 S.W.2d 930 (Ark. 1997); *Brandt v. Bib Enterprises, Ltd.*, 986 S.W.2d 586 (Tenn. Ct. App. 1998).

We conclude that the jury verdict was supported by ample material evidence and we affirm the judgment of the Trial Court and remand with the cost of the appeal assessed to Next Generation, Inc.

_____
HERSCHEL PICKENS FRANKS, J.